## PEOPLE *v.* SULLIVAN

1. CONSTITUTIONAL LAW—DUE PROCESS—ASSISTANCE OF COUNSEL—
ARRAIGNMENT ON COMPLAINT AND WARRANT.

The constitutional right of a person accused of a crime to be
assisted by counsel comes into being at that stage of the legal
proceedings where the defendant's rights may be adversely
affected without legal advice; therefore the fact that defendant
was not represented by counsel when he was arraigned on a
complaint and warrant at a hospital three days after the
crime was committed is not grounds for reversal where nothing
in the record indicates that any statements, admissions, or
other forms of evidence were received during the period that
defendant was without counsel and there is no showing that
defendant was affected adversely in any other way.

2. CONSTITUTIONAL LAW—DUE PROCESS—ASSISTANCE OF COUNSEL—
CRITICAL STAGES—ARRAIGNMENT ON COMPLAINT AND WARRANT.

The right to be assisted by counsel is limited to the critical
stages of the legal proceedings, and arraignment on a com-
plaint and warrant and preliminary examination proceedings
do not necessarily constitute a critical stage of the proceed-
ings.

3. CONSTITUTIONAL LAW — DUE PROCESS — COMMUNICATION WITH
OTHERS.

Restrictions on a criminal defendant's right to communicate with
friends, relatives, or visitors is to be strongly disapproved,
but the fact that defendant was not allowed to communicate
with others for 15 days after the commission of a crime is

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 313, 314.
16 Am Jur 2d, Constitutional Law § 573.
[3] 21 Am Jur 2d, Criminal Law §§ 312–314.
[4] 46 Am Jur, Robbery § 47.
58 Am Jur, Witnesses § 577.
29 Am Jur 2d, Evidence § 333.

(1)

not grounds for reversal where defendant was for this entire
period being held at a hospital in serious condition from
gunshot wounds suffered at the scene of the crime.

4. ROBBERY — EVIDENCE — COMPLAINING WITNESS — PREVIOUS ROB-
BERIES.

Statement at trial by complaining witness that she had hired
an employee to stay in the back of her store with a gun be-
cause she had had trouble there before was not grounds for
a mistrial even though it may have been unresponsive where the
court explained to the jury that the remark only stated why
she had hired someone to be in the back of the store and
that it had nothing to do with defendant.

Appeal from Recorder's Court of Detroit, Frank
G. Schemanske, J. Submitted Division 1 December
12, 1968, at Detroit. (Docket No. 4,193.) Decided
June 25, 1969. Leave to appeal denied September
3, 1969. See 382 Mich 779.

James Theodore Sullivan, alias James Suttles,
was convicted of robbery armed. Defendant ap-
peals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Walter Gibbs,* Assistant Pros-
ecuting Attorney, for the people.

*Edward P. Echlin,* for defendant.

Before: McGREGOR, P. J., and FITZGERALD and
CYNAR,* JJ.

CYNAR, J. The defendant was arraigned on the
complaint and warrant by Recorder's Court Judge
David I. Kaufman. The arraignment was conducted

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

on December 16, 1966, at Detroit General Hospital where the defendant was being held while recovering from gunshot wounds sustained at the scene of the crime.   On January 25, 1967, a request was made to have the court appoint counsel, and an attorney was appointed on the same day to represent the defendant.   An examination was held on February 8, 1967; the record reflects defendant was represented by counsel and, at the time the case was called, both the prosecutor and the defendant's counsel stated they were ready for their respective sides. The prosecution submitted testimony and moved that the defendant be bound over for trial, the defense having no opposition to the motion.   Thereafter, a motion to quash the information and to discharge the defendant was made and heard by the court.   The motion to quash was based on the following grounds:

(1) That while the defendant was arrested on December 13, 1966, he was not arraigned before a magistrate until December 16, 1966;

(2) That during the period of time and at the time of his arraignment, he was not represented by counsel;

(3) That his arraignment took place at a time when the defendant wounded by gunfire and in great pain was a police prisoner at the Detroit General Hospital and, although before such arraignment requested that he be permitted to first seek the advice of counsel, the court denied his request;

(4) That from December 13, 1966, until December 28, 1966, and prior to and until after his arraignment, he was held in custody by the police, during all of which time he was denied the right to make a telephone call, or to have one made for him or permitted to have visitors, or prevented from seeking the advice of counsel, friend, or relative;

(5) That by reason whereof he was denied his rights under Article VI and Article XIV of the Amendments to the Constitution of the United States of America.

The motion to quash was denied.

At the trial, the proofs indicated the following:

On December 13, 1966, at about 11 p.m., Helen Hall, an owner of a party store in the city of Detroit, was filling a beer cooler when two men walked into the store. James Sullivan, who was one of the men, had a gun; and he said to her, "This is a stick-up," and "Who else is in the store with you?". While she replied no one was in the back, she knew John Croce was in the back part of the party store with a rifle. She had hired Croce who stayed in back with a gun because of previous trouble in the party store. While the prosecution was questioning this witness on direct examination, defense counsel objected to that portion of the answer relating to the reason why John Croce was in the back of the party store. The objection was on the basis that the witness made a voluntary statement relating to other crimes. A motion for a mistrial followed the objection. The court denied the motion for mistrial, stating the witness merely explained why she had someone in the back of the store, and it had nothing to do with the defendant. As the defendant marched her to the back of the store, John Croce came from the back and fired a shot, and she felt the man fall against her. She went down to the floor and as she did so, she heard the clicks of a gun behind her. While Sullivan had a gun in her back, the other man went to the register and took money out of it. The other man ran out of the store when the shots were fired. There had been no customer in the store for about five minutes

before the entrance into the store by Sullivan and the other man.

John William Croce stated that at the time and date stated he was working part-time in the party store as a guard. He did not see the men come in. He looked through the beer cases and saw a man holding Mrs. Hall. He grabbed his rifle, came out, and from five feet fired at the man, and thereupon, Mrs. Hall and the man holding her dropped to the floor. The man let Mrs. Hall go, pointed the gun at Croce and pulled the trigger twice; but both times the gun missed fire. Thereupon, Croce fired again and hit Sullivan in the neck and fired three other shots at the man who had been at the register.

Darwin Anstiss, a police officer for the City of Detroit, while on duty, received a radio call on a hold-up, proceeded to the party store and on arrival found the defendant in a sitting position against the beer cooler with a gun near him. The gun contained five cartridges; two cartridges had indentations from being fired, indicating the trigger had been pulled but the bullets did not explode. He examined the defendant and at first thought the defendant was dead. He saw that the defendant had a hole in his neck. The defendant was taken to the hospital.

Defendant Sullivan testified he walked alone into the party store to get some cigarettes. At the time he walked in, he saw no other man enter the store and did not see any man go to the cash register. As he walked into the store, he dropped a coin on the floor, bent down to pick it up, and was shot. The man who shot him stood over him; and, as he picked himself up to ask why he was shot, he was shot a second time. He was unconscious while entering the hospital and was in the hospital for 34 days. He denies having a gun or being involved

in a hold-up. On cross-examination, the prosecution asked a question regarding his arrest for and conviction of any felony. The defense made an objection, and the court overruled the objection, ruling that the answer would be received for purposes of credibility. The defendant answered that he had been previously arrested and convicted of a felony. In the instruction, the court clearly charged the jury as to what weight and credibility was to attach to the defendant's testimony regarding his previous convictions.

The defense offered a medical report dated January 6, 1967, from the Detroit General Hospital. There being no objection, the court received it. The medical report indicated that defendant James Sullivan was received having two gunshot wounds. A bullet entered just posterior to ramus of right mandible and passed out in back of the neck at about level C–6. The other bullet entered just posterior to the lateral end of the clavicle coming to rest inferior to the scapula. The record indicated the patient was suffering paralysis of the left hand. The X-rays reveal evidence of a metallic bullet in the left upper lung field. There was indication of some paralysis of the neck movement.

The defendant contends that the denial of his request for counsel at the arraignment on the warrant and complaint violated his Constitutional rights guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. This alleged violation was not raised until after the examination was held. The right to counsel comes into being at that stage of the legal proceedings where the defendant's rights may be adversely affected without legal advice. *United States v. Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L

Ed 2d 1149); *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977).

Nothing in the record of this case indicates that any statements, admissions, or other forms of evidence were received during the period that the defendant was without counsel, nor is there any showing the defendant was affected adversely, was harmed, or was prejudiced in any manner in his preparation before trial or in the trial by the fact that he did not have counsel at the arraignment.

The right to counsel is limited to a right to counsel at the critical stages of the proceeding. *People* v. *Dye* (1967), 6 Mich App 217. The United States Court of Appeals for the Sixth Circuit made this observation in the case of *Lundberg* v. *Buchkoe* (CA6, 1968), 389 F2d 154, 158:

"It cannot be said that Michigan's arraignment and preliminary examination proceedings, in and of themselves, constitute a critical stage of the proceedings. Nor were there any special circumstances in appellant's case which might suggest that the proceedings were critical; no plea or statement was in fact obtained from appellant at his arraignment and, aside from his right not to be held in custody absent probable cause, appellant neither lost nor waived any right or defense."

The defendant argues that his constitutional rights were violated by not being allowed to communicate by telephone, or to have visitors, or to seek the advice of counsel, friend, or relative from December 13, 1966, until December 28, 1966, before and after his arraignment. There is no dispute regarding the severe impairment in the defendant's health while hospitalized. Restricting a person's right to communicate with friends, relatives, or visitors, as alleged, is strongly disapproved. However, even if true in this case, this allegation of error standing

by itself does not presuppose prejudicial error under the existing circumstances.

On direct examination, the prosecutor asked the following question of Helen Hall.

"*Q.* Will you tell the court and jury what happened?

"*A.* Well, I was filling the beer cooler and just as I was about to finish filling it up, in walked two men and all I seen was this James Sullivan; he came behind me immediately; I though he was just a regular customer because we get a lot of transients and he walked in very, very fast and before I could even say 'May I help you?' he had a gun in my back and says, 'This is a stickup'; and he says 'Who else is in here with you?' Well, I knew I have a hired employee there that stays back there with a gun because we have had trouble there before, so  *  *  *"

Defense counsel objected on the record to the witness volunteering the answer which referred to other crimes and, further, defense counsel moved for mistrial on the ground that the statement was prejudicial. The court denied the motion, stating that the witness only explained to the jury why she had someone in back of the store and that it had nothing to do with the defendant. The question asked by opposing counsel was not necessarily not responsive; and, even if it were, it appears that a question by the prosecution as to why Croce was in back of the store with a gun would have been in order. Neither the response by the witness nor the court's ruling constitutes reversible error.

Affirmed.

McGREGOR, P. J., concurred.

FITZGERALD, J., concurred in result only.